IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENYATTA BROWN,
#K79185,

        Plaintiff,

v.

A. WILLS,
DAVE WHITE,
JEFF MULHOLLAND, and
H. PRICE,

        Defendants.

Case No. 21-cv-00129-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Kenyatta Brown, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Brown claims that Menard has an unconstitutional policy of denying inmates daily use of the telephones. He requests monetary damages and injunctive relief.

    The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

    Brown alleges that he transferred from Stateville Correctional Center to Menard on January

7, 2020. (Doc. 1, p. 7). At Menard, inmates are allowed to use the phones in the living units once a week on average. For nine days, Brown was housed in North 1, were the "prison workers" reside. Inmates in North 1 are allowed to use the phones in the living unit every two days.

After learning that all cellhouses, except for North 1, limited phone use to once a week, Brown filed a grievance. (*Id.*). In the grievance, Brown wrote that out of the three maximum security prisons in Illinois, Menard is the only prison that does not offer inmates the opportunity to use the phones daily. (*Id.* p. 7-8). Counselor Price replied to his grievance noting that Brown was allowed to use the phone in the unit every four days and suggested to Brown to attend yard if he wanted additional phone usage. Grievance Officer Mulholland concurred in Price's findings and in the grievance response, Mulholland listed the number of times that Brown used the phones on the yard and in his living unit over a three week period during March 2020. (*Id.* at p. 8, 18). The total came to thirty-one times.

Brown asserts that the responses to his grievance were misleading. First, he was grieving about phone usage in his living unit, not on the yard. The suggestion the yard time was available to make telephone calls was inaccurate because during the pandemic, yard time was restricted at times, and phone usage time was not increased in the living units. (*Id.*). Specifically, in August 2020, the phones on the yard were shut off, and inmates were limited to yard time once per week to prevent the spread of COVID-19. Again, the phone usage in the living units stayed at three to five times a week. (*Id.*). The phone usage had increased from once weekly to every three to five days due to COVID-19 policies increasing phone usage for inmates. However, Stateville Correctional Center and Pontiac Correctional Center, the other maximum security prisons, increased inmates' phone usage to multiple times a day. (*Id.* at p. 11).

The report that Brown had made thirty-one calls in March 2020 was also misleading because many of his calls are made to multiple people during a single twenty minute time period.

An inmate is given only twenty minutes to call out before his account is suspended for thirty-five minutes. This policy forces inmates to try and call multiple people for a few minutes each.

Warden Wills concurred in the denial of his grievance. Brown timely appealed the grievance to the Administrative Review Board, but Administrative Review Board Member, Dave White, denied the grievance as untimely.

Brown made multiple complaints to mental health concerning the effect of not being able to communicate with his family. (Doc. 1, p. 12). He has a history of anxiety and depression, and his treatment consists, in part, of communication with family and loved ones. (*Id.*).

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

> **Count 1:** Fourteenth Amendment due process claim against Price, Mulholland, and White in mishandling his grievance regarding telephone use at Menard.
>
> **Count 2:** Eighth Amendment claim against Wills for denying Brown the ability to use the telephone daily.
>
> **Count 3:** Equal protection claim against Wills for denying Brown the ability to use the telephone daily.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Count 1

"Prison grievance procedures are not constitutionally mandated by the First Amendment

and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). In fact, the Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir.1982). Therefore, the misstatement of facts in the grievance responses and the failure to fully investigate Brown's assertions by Counselor Price and Grievance Officer Mulholland, as well as the denial of the grievance by ARB Member White, absent any personal involvement in an underlying alleged deprivation, states no claim for relief. Additionally, the Constitution does not recognize an inmate's liberty interest in telephone privileges. *See Sandin v. Connor,* 515 U.S. 472 (1992); *Arsberry v. Ill.*, 244 F.3d 558, 564 (7th Cir. 2001); *Aldin v. Ill. Dept' of Corr.,* No. 08-cv-343-MJR, 2009 WL 1309343, at *2 (S.D. Ill. May 11, 2009). Thus, Count 1 is dismissed.

**Count 2**

The telephone use policy at Menard also does not amount to cruel and unusual punishment. Prior to the implementation of COVID-19 policies, Brown had access to the telephones once per week in his living unit and at additional times during yard. After the implementation of the COVID-19 policies, he had access to the telephone every three to five days in his living unit. He also could access the telephone in the yard when movement was not restricted. Despite this availability, Brown believes that he should have access to a telephone in his living unit daily.

Brown has multiple occasions each week to use the telephone, and he has not alleged that he has been restricted in any way from communicating with family in friends via letters. The denial of daily use of the telephone is "not sufficiently serious to rise to the level of an Eighth Amendment violation," and the "contention is frivolous." *Ashley v. Seamon,* 32 F. App'x 747, 750 (7th Cir. 2002) (ruling that the district court correctly determined that denial of phone calls, cigarettes,

television, radio, and reading materials while in segregation did not violate the Eighth Amendment). Thus, Count 2 is dismissed.

### Count 3

Brown alleges that Warden Wills violated his right to equal protection under the Fourteenth Amendment because Warden Wills implemented more restrictive telephone policies at Menard compared to those at other maximum security facilities. (Doc. 1, p. 13). Brown seems to believe that since Menard is classified as a maximum security facility, its policies concerning telephone usage should exactly mirror other maximum security facilities. This is incorrect. "There is no constitutional provision which entitles a state prisoner to a particular set of conditions or to conditions of confinement identical with those of every other inmate in a particular institution." *Buchanan v. Duckworth,* 958 F. 2d 374 (7th Cir. 1992). Accordingly, there is no guarantee that Brown will receive the exact same privileges as an inmate at any other state facility, regardless of what "level" that institution has been classified.

Furthermore, Brown never alleges that Warden Wills acted with any kind of discriminatory purpose or that he or his fellow inmates at Menard were singled out for adverse treatment. *See Meriwether v. Faulkner,* 821 F.2d 408, 415 n.7 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). *See also Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996). Rather, his claims reflect that prison administrators have discretion to implement policies which may vary from those in other institutions. A prison does not cross the line to an equal protection violation merely by having different rules than its counterpart institutions. *See Durso v. Rowe,* 579 F. 2d 1365, 1372 (7 Cir. 1978). For these reasons, Brown has failed to state a claim under the Equal Protection Clause, and Count 3 is dismissed.

### MOTION FOR APPOINTMENT OF COUNSEL

Brown has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**. [1] Brown has failed to meet his threshold burden of demonstrating he has made a reasonable attempt to secure counsel on his own. He does not describe his efforts to contact attorneys, and only states that "they've either failed to respond to my letter or declined." Brown includes a letter from a law firm declining representation, but contacting one law firm does not establish the reasonable effort required on the part of a plaintiff before he may seek assistance from the Court in obtaining representation. Accordingly, his request for court recruited counsel is denied.

### DISPOSITION

For the reasons stated above, Counts 1, 2, and 3 are **DISMISSED,** and therefore, the Complaint does not survive preliminary review pursuant to 28 U.S.C. § 1915A. Given that Brown's claims regarding access to the telephones do not establish viable theories of liability under the Eighth or Fourteenth Amendments, the Court finds that allowing further amendment would be futile. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).Thus, the Court finds it appropriate to **DISMISS** the case with prejudice for failure to state a claim. **This dismissal shall count as a strike under the provisions of 28 U.S.C. 1915(g).**

The Motion for Recruitment of Counsel (Doc. 3) is **DENIED.**

Brown is **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Brown wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Brown chooses to appeal, he

---

[1] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza,* 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien,* 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Brown may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED t**o enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

DATED:   September 27, 2021

    *s/Stephen McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**